```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT


KBA NORTH AMERICA INC.,            :
       Plaintiff,                  :
                                   :
            v.                     :    File No. 1:07-CV-118
                                   :
AMERIGRAPH, LLC and                :
DIRK C. GRIZZLE,                   :
       Defendants.                 :
_____:
```

RULING ON DEFENDANTS' MOTION TO DISMISS
OR, ALTERNATIVELY, TO TRANSFER VENUE
(Paper 8)

I.   Introduction

In this breach of contract action, Plaintiff KBA North America, Inc. ("KBA") alleges Defendants Amerigraph, LLC ("Amerigraph") and Dirk C. Grizzle ("Grizzle") (at times collectively referred to as "Defendants") have used its printing press without making the required payments for its use. Defendants now move to dismiss for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and (3), or alternatively, to transfer this action to the United States District Court for the Southern District of Ohio.  For the following reasons, Defendants' motion is denied.

1

II.  Background

The following facts are assumed to be true for purposes of the pending motion.  KBA, a Delaware corporation with its principal place of business in Willison, Vermont, is a distributor of commercial printing presses.  Amerigraph, a limited liability company organized under the laws of Ohio with its principal place of business in Gahanna, Ohio, provides printing services.  Ohio resident Grizzle is Amerigraph's owner and CEO.

The KBA-Amerigraph romance blossomed in 2003 when the two were introduced at a Chicago conference.  By April 2004, they had grown close enough to enter into a Purchase Agreement by which KBA agreed to sell Amerigraph an offset printing press complete with standard equipment and various accessories (the "Equipment") for $6,351,000.  (Paper 15-2).  The terms of the Purchase Agreement, including KBA's price quote, were prepared by personnel at KBA's Vermont office.  (Paper 15, ¶ 11).  Grizzle signed the Purchase Agreement on behalf of Amerigraph, and KBA President and CEO Ralf Sammeck ("Sammeck") signed on behalf of KBA "at its Offices in Williston, Vermont."  (Paper 15-2 at 2).  The Purchase Agreement contains a governing law provision in which Amerigraph consents to the jurisdiction of Vermont courts

and agrees Vermont laws bear a reasonable relationship to the transaction.  (Paper 15-2 at 3).

A few months later it was decided KBA would lease the Equipment to Amerigraph instead of selling it outright.  Thus, in July 2004 KBA and Amerigraph entered into a Lease Agreement which superseded the Purchase Agreement "except for the warranty and related provisions contained therein."  (Paper 15-3 at 3).  Grizzle signed the Lease Agreement on behalf of Amerigraph and returned the documents to KBA's Vermont office, (Paper 15, ¶ 10), while KBA Vice President of Finance Gerrit Zwergel ("Zwergel") signed on behalf of KBA "at [its] Office at Williston, Vermont."  (Paper 15-3 at 12).  The Lease Agreement provided for payments to be made to KBA at its Vermont office.  (Paper 15-3 at 3; Paper 15-6).  Thereafter, Amerigraph made at least five payments to KBA's Vermont office.

The same day as the Lease Agreement was signed, two other documents were executed: (1) an "Individual Guaranty" by which Grizzle personally guaranteed Amerigraph's obligations under the Purchase and Lease Agreements as well as any amendments or other agreements subsequently entered into by the parties, (Paper 15-3 at 21-22); and (2) to facilitate Amerigraph's lease of the Equipment, an Assignment by which KBA collaterally assigned the Lease Agreement to People's Capital and Leasing Corporation

("PCLC"). These documents, as well as the Lease Agreement itself, contain provisions in which the parties consent to the jurisdiction of Connecticut courts and/or agree Connecticut laws govern the transactions. (Paper 15-3 at 11, 22, and 27).

With the appropriate paperwork in order, KBA personnel in Vermont began to administer and manage the KBA-Amerigraph affair by, among other things, coordinating the schedules for shipping, installation, and service of the Equipment and training of personnel. (Paper 15-3, ¶¶ 12-13). On December 29, 2004 KBA shipped the Equipment from Germany to Amerigraph's Ohio offices.

It soon became clear that the honeymoon period, if ever there was one, had reached its zenith. In late 2005, Grizzle contacted Zwergel at KBA's Vermont office to discuss Amerigraph's financial difficulties and the possibility of amending the Lease Agreement. Negotiations ensued and Zwergel eventually executed an amended Lease Agreement on behalf of KBA at its Vermont office. (Paper 15-3, ¶ 16). By May 25, 2007, having not received certain payments from Amerigraph for some time, KBA filed the instant lawsuit.

III. Discussion

    A.   Personal Jurisdiction

Defendants first move for dismissal based on lack of personal jurisdiction under Rule 12(b)(2). Because KBA is facing

this motion prior to discovery, it "need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials to defeat the motion." Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998) (internal quotation marks and citations omitted).

Courts employ a two-part inquiry to determine whether there is personal jurisdiction over a non-resident defendant by first reviewing the applicable long-arm statute and then considering whether jurisdiction violates due process. Anichini, Inc. v. Campbell, 2005 WL 2464191, at *2 (D. Vt. Oct. 4, 2005). Because Vermont's long-arm statute allows jurisdiction over a defendant to the full extent permitted by the Due Process Clause, the inquiry in Vermont is reduced only to the due process analysis. Id. The due process analysis requires the Court to consider (1) whether the defendant has sufficient "minimum contacts" with the forum state, and (2) if such contacts exist, whether jurisdiction based on such contacts is reasonable under the circumstances of the particular case. Id.

    1.   Minimum Contacts

The guiding principle for evaluating a defendant's contacts with the forum state is that jurisdiction must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state thus

invoking the benefits and protections of its laws." Sollinger v. Nasco Int'l, Inc., 655 F. Supp. 1385, 1386 (D. Vt. 1987) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). Jurisdiction is not proper unless the defendant actively initiates contacts in the state or creates continuing obligations between himself and a Vermont resident. See Anichini, 2005 WL 2464191, at *2.

Here, the Purchase and Lease Agreement were signed by KBA at its Vermont office, the terms of at least one of the agreements were prepared by personnel at KBA's Vermont office, certain payments under the Lease Agreement were to be made to KBA at its Vermont office with Amerigraph making at least five such payments, the KBA-Amerigraph relationship was managed by KBA's Vermont personnel, and Grizzle contacted KBA's Vermont office to negotiate amendments to the Lease Agreement.  Taken together and viewed in a light most favorable to Plaintiff, KBA has made at least a prima facie showing that Defendants initiated contacts with KBA in Vermont and entered into agreements with KBA, a Vermont resident, that imposed continuing obligations on Defendants.  Defendants, therefore, should have reasonably anticipated being haled into a Vermont court.

2.  Reasonableness

Because KBA has satisfied the first part of the due process inquiry by establishing minimum contacts, the Court next considers whether asserting personal jurisdiction based on these contacts is reasonable, such that it aligns with "traditional notions of fair play and substantial justice."  Anichini, 2005 WL 2464191, at *4 (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996)).  Factors bearing on reasonableness are the burden on Defendants, interests of the forum state, KBA's interest in obtaining convenient and effective relief, the judicial system's interest in efficient resolution, and the shared interest of the states in forming substantive policy.  Id. (citing Burger King, 471 U.S. at 477).

Any burden Defendants may incur by litigating in Vermont is offset by KBA's interest in obtaining convenient relief.  For instance, while the bulk of Defendants' witnesses and documents may be in Ohio, the bulk of KBA's witnesses and documents appear to be in Vermont.  The judicial system's interest and shared interest of the states in forming substantive policy do not weigh decidedly in any direction.  Therefore, because sufficient minimum contacts exist and Vermont has a clear interest in protecting the business interests of its residents, traditional

notions of fair play and substantial justice are not violated by the exercise of jurisdiction

Accordingly, dismissal under Rule 12(b)(2) is not warranted.

B.   Venue

Defendants next move to dismiss because of improper venue under Rule 12(b)(3).  Contrary to Defendants' position, however, the Court concludes venue is proper in Vermont as to both Amerigraph and Grizzle because "a substantial part of the events or omissions giving rise to the claim occurred" in Vermont.  28 U.S.C. § 1391(a)(2).  For one, as previously discussed, the underlying agreements were at least in part negotiated, prepared, and entered into by KBA in Vermont.  See ESI, Inc. v. Coastal Power Prod. Co., 995 F. Supp. 419, 425 (S.D.N.Y. 1998) ("Venue may be proper in the district where the contract was substantially negotiated, drafted, and/or executed, even if the contract was not to be performed in that district and the alleged breach occurred elsewhere.").  Furthermore, at least part of the alleged breaching conduct - the failure to make payments to KBA at its Vermont office - supports a finding that venue is proper in the District of Vermont.  See Sea Tow Servs. Int'l v. Pontin, 472 F. Supp. 2d 349, 364-65 (E.D.N.Y. 2007) (finding venue in New York proper where a portion of the alleged breaching conduct was a failure to mail payments due under the agreement to New York).

Accordingly, dismissal under Rule 12(b)(3) is not warranted.

C.   <u>Transfer</u>

Defendants alternatively request to transfer venue to the United States District Court for the Southern District of Ohio under 28 U.S.C. § 1404(a).[1]  Section 1404(a) authorizes discretionary transfers "[f]or the convenience of parties and witnesses, in the interest of justice."  It is ultimately Defendants' burden of establishing the appropriateness of a transfer; "[a]bsent a clear and convincing showing that the balance of convenience strongly favors an alternate forum, discretionary transfers are not favored."  <u>Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc.</u>, 977 F. Supp. 297, 302 (D. Vt. 1997).

Factors to be considered in deciding whether to transfer include the convenience of the parties, the convenience of witnesses, ease of access to evidence, and the interests of justice.  <u>Id.</u>  Several of these factors are the same as those discussed above in the personal jurisdiction analysis, and for similar reasons, the Court concludes Defendants have not met

---

[1]Defendants had also initially requested a transfer under 28 U.S.C. § 1406.  A section 1406 transfer, however, is only appropriate if, as is not the case here, it is determined that the action was brought in an improper venue.

their burden of showing the appropriateness of a transfer to the United States District Court for the Southern District of Ohio.

IV.  Conclusion

It is hereby ORDERED:

1. Defendants' motion to dismiss for lack of personal jurisdiction and improper venue, or alternatively, to transfer this action (Paper 8) is DENIED.

2. The Clerk of the Court shall send a copy of this ruling by certified mail to:

    a.  Amerigraph, LLC
        1600 Eastgate Parkway
        Gahanna, Ohio 43230;

    b.  Dirk C. Grizzle
        1600 Eastgate Parkway
        Gahanna, Ohio 43230; and

    c.  Dirk C. Grizzle
        4519 North Gate Road
        New Albany, Ohio 43054.

3. Amerigraph shall retain legal representation and file a notice of appearance of counsel on or before December 3, 2007. See L.R. 83.3(b) ("A corporation or unincorporated association cannot appear *pro se* in any action or proceeding.").

4. Grizzle shall enter a *pro se* appearance, or retain legal representation and file a notice of appearance of counsel, on or before December 3, 2007.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 16th day of November, 2007.

                                /s/ J. Garvan Murtha
                                J. Garvan Murtha
                                United States District Judge